SONEY FORD v. STATE OF NEBRASKA.

FILED MARCH 2, 1904. No. 13,296.

1. **Manslaughter.** Where one points a loaded pistol at another, although he has some reason to think it is not loaded, he is guilty of an assault; and if he pulls the trigger, thus causing the pistol to be discharged and the person assaulted is killed thereby, he is guilty of manslaughter.

2. **Instructions.** Instructions requested by the defendant examined, and *held* properly refused.

3. **Request for Instructions.** A defendant in a prosecution for murder, is ordinarily entitled to have the theory of his defense submitted to the jury by proper instructions; but where, by his own theory, he is guilty of manslaughter, and the jury so find, his rights are not prejudiced by a failure to give his instructions.

4. **Sentence Reduced.** The defendant, in sport or through mere wantonness, pointed a pistol at the deceased, having some reason to think that it was not loaded; and the deceased, apparently in fear, said, "Look out how you handle that revolver around here; you have got your finger on the trigger"; and the defendant replied, "I know it, and I will show you how it works." He thereupon pulled the trigger, and a shot followed which killed the deceased. On his trial the jury found defendant guilty of manslaughter. *Held,* That under these circumstances, a sentence of seven years in the penitentiary was excessive, and that the sentence should be reduced to four years.

ERROR to the district court for Cherry county: JAMES J. HARRINGTON, JUDGE. *Affirmed. Sentenced reduced.*

*Allen G. Fisher* and *John M. Tucker,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown, contra.*

BARNES, J.

The state prosecuted Soney Ford in the district court for Cherry county for killing one Allen Rothchilds. The information charged him with murder in the first degree, and the jury found him guilty of manslaughter. The trial judge sentenced him to imprisonment in the penitentiary for the period of 7 years. To reverse this sentence he brings error, and will be called the plaintiff.

1. It is contended that the evidence does not sustain the verdict, and the special reason given for this contention is that it was not shown that the killing was done while the plaintiff was in the commission of an unlawful act. The facts, as shown by the record, are substantially as follows: The plaintiff is a colored man who had been a soldier in the regular army and was discharged while his command was at Fort Niobrara, near the village of Valentine, in Cherry county, Nebraska. After his discharge, he was employed in driving a team with which he carried passengers to and fro between the village of Valentine and the Fort. On the evening of December 24, 1902, at about 9 o'clock, the plaintiff started from Valentine to the Fort with 4 or 5 passengers, and on the way they concluded to stop at what is commonly known as the "Hog Ranch," a vile resort for men and women, situated near the Post. When they arrived at this resort, they tied the team and went into that part of the ranch called the dance hall. They found several persons there, both men and women, all colored; and after warming themselves at the stove the plaintiff danced a couple of times; after the dance was over, he went up to the platform that the piano stood on, and where Rothchilds sat, having the pistol with

which the shooting was done in his hand. He flourished it around, and the deceased said to him, "You should mind how you handle a gun around here; you have got your finger on the trigger"; and the plaintiff said, "I know I have, but I want to show you how it works." The pistol was pointed directly at Rothchilds' face, and was, at that instant, discharged; deceased fell from the piano stool where he was sitting, and the plaintiff ran up and tried to help him up; threw the revolver on the floor, and said to the bystanders, "Don't hurt me, I didn't mean to shoot him."

There was no evidence showing, or tending to show, any ill feeling between Rothchilds and the plaintiff, and no motive was shown for the killing. Of course there is some dispute in the testimony over minor particulars, but the foregoing fairly states the situation, and what occurred at the time the fatal shot was fired. It is evident from the record and the verdict that the jury acquitted the plaintiff of murder in the first degree and murder in the second degree, finding that there was no premeditation or deliberation, and that the shooting was done without malice; but did find that the killing was done unintentionally while the plaintiff was in the commission of an unlawful act. We think that the evidence fully sustains this verdict. The pointing of the revolver at the deceased and the pulling of the trigger, under the circumstances, was an unlawful act.

The pointing of a loaded revolver at another, if within range, is an assault, and the same is true if it is not loaded, if the person aimed at is not aware of the fact. Maxwell, Criminal Procedure (2d ed.), 81; *Beach v. Hancock*, 27 N. H. 223. As already indicated, to point a gun or pistol at a person who does not know but that it is loaded, and has no reason to believe that it is not, is an assault. 1 McClain, Criminal Law, sec. 233; *State v. Shepard*, 10 Ia. 126; *State v. Triplett*, 52 Kan. 678. In the case of *State v. Shepard, supra*, the defendant was indicted for an assault with a gun with intent to commit murder, but was

convicted of an assault only.  At the close of the testimony the defendant requested the court to instruct the jury: "First, that they must find that the gun with which the alleged assault was committed, was loaded and in a condition to be fired off, or the presentation of it was no assault; second, that if they found the gun was not loaded, they would find the defendant not guilty; third, that if they did not find an intent to kill, they should find the defendant not guilty."  The refusal to give these instructions was assigned as error.  The court said:

"We do not think the court erred.  Mr. Greenleaf (vol. 1, sec. 59) states that the presenting a gun or pistol at a person is an assault.  But he adds, that 'whether it be an assault to present a gun or pistol, not loaded, but doing it in a manner to terrify the person aimed at, is a point upon which learned judges have differed in opinion.' * * * After viewing the question in its various lights, we are inclined to hold with those who regard it as an assault, where the person aimed at does not know but that the gun is loaded, or has no reason to believe that it is not."  In *State v. Triplett, supra,* it was held:

"A person may be guilty of an assault upon another with a pistol without firing it at all, and if he does fire it, without intending at the moment of firing to hit the person upon whom he is charged with committing the offense, when the attitude or action of a party is threatening towards another, and the effect is to terrify, the offense of assault is complete.  * * *  The state interferes with and punishes evil conduct whenever, among other reasons, it tends to public disturbance or breaches of the peace, creates disquiet in the community, or inflicts on the individual a wrong entitling him to governmental protection."

The testimony discloses that when the plaintiff pointed the revolver at Rothchilds he put him in fear.  The remark made by the deceased shows that he feared injury, therefore the assault, even without the firing of the pistol, was complete.  And so it may be said with absolute certainty

that at the time the fatal shot was fired, although it was done unintentionally, the plaintiff was in the commission of an unlawful act.

2. It is further contended that the court erred in refusing to give the jury the following instruction requested by the plaintiff.

"You are instructed by the court that, if you are not convinced beyond a reasonable doubt by the evidence that the defendant discharged the pistol intentionally, and knew or had reason to believe it was then loaded, but on the contrary the evidence undisputed tends to the belief that it was accidental, and not done with any intent or desire to injure Rothchilds, you should acquit the defendant."

This instruction is so faulty that the court was justified in refusing to give it. As we have seen, the evidence was amply sufficient to convict the plaintiff of the crime of manslaughter, and the mere fact that the shooting was accidental, and not done with intent or desire to injure the deceased, did not entitle the plaintiff to an acquittal. At the time the fatal shot was fired, although the plaintiff had no intention or desire to injure the deceased, and although the shot was accidental, yet he was in the commission of an unlawful act, and the result of the shooting, together with this fact, clearly rendered him guilty of the crime of manslaughter. We hold, therefore, that the court did not err in refusing to give this instruction.

3. It is also contended that the plaintiff was entitled to have his theory of the case submitted to the jury. It is a sufficient answer to this contention to say that, by the plaintiff's own theory, coupled with the undisputed facts, he was guilty of the crime of manslaughter, and, the jury having found him not guilty of a greater offense, the failure of the court to give any other or more specific instruction relating to his theory in no manner prejudiced his rights.

4. Lastly, it is contended that the court erred in refusing to consider plaintiff's supplemental motion for a new trial, filed on the 9th day of February, 1904. The par-

ticular grounds of this motion are alleged to be newly dis-
covered evidence material for the defendant, which could
not, with reasonable diligence, have been discovered and
produced at the trial, or within 3 days after the verdict
was rendered; and such alleged newly discovered evidence
is presented with the motion in the form of an affidavit.
This affidavit is made by one Arthur N. Compton, one of
the surgeons who attended the deceased from the day he
was shot to the time of his death.  The substance of the
affidavit is that the doctor, during a professional visit to
the deceased, asked him how the shooting occurred, and
what caused it, and that the deceased answered as fol-
lows: "Ford did not intend to shoot me, it was an acci-
dent," or words to that effect.  Even if this evidence were
true and should be so accepted by the jury, still the plain-
tiff, under the circumstances, would be guilty of the crime
of manslaughter.  Again, the evidence was merely cumu-
lative, and its effect would only strengthen the other evi-
dence given on the trial, and which tended to show that
the shooting was accidental.  Indeed, the jury must have
found that the shooting was unintentional, otherwise it
would have found the defendant guilty of either murder
in the first or second degree.  Again, the affidavit and
motion have not been preserved and brought here in the
form of a bill of exceptions, and therefore we must refuse
to consider it.  For these reasons, we can not say that the
trial court erred in refusing to consider the supplemental
motion and grant a new trial thereon.

A careful examination of the evidence convinces us that
the jury arrived at a correct verdict.  It is apparent that
the plaintiff was not actuated by any motive of hatred or
revenge in his actions toward the deceased.  It rather ap-
pears that he was having a good time just before the shoot-
ing occurred; that he had danced a couple of times with the
women; that he had given an exhibition of what is called
the "Buck and Wing" dance, and in fact was cutting quite
a wide swath, to use a common expression; that while
showing off, so to speak, he drew the pistol, which he had

some reason to suppose was not loaded, and with his finger on the trigger pointed it at Rothchilds; deceased was frightened, and told him to look out how he handled the pistol around there, that he had his finger on the trigger, and the plaintiff replied that he knew it, and he wanted to show him how it worked; that he pulled the trigger with the pistol pointed directly at the face of his victim, and the shot which followed was as much a surprise to the plaintiff as to any one. In this view of the case he was technically guilty of the crime of manslaughter, and while he ought to receive a reasonable amount of punishment for his criminal carelessness, and his uncalled for and unlawful act, yet it is our opinion that the sentence imposed by the trial court is too severe. The fact that plaintiff has been convicted of a crime does not authorize the courts to deprive him of those rights which the law still recognizes, nor treat him as having no rights. Our constitution provides: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted." We think that a sentence of 7 years in the penitentiary, under all the circumstances, may fairly be said to be a cruel punishment, and under the power given us by section 509a of the code of criminal procedure we will reduce the sentence 3 years. The judgment of the trial court is reduced to imprisonment for 4 years and, as thus modified, is affirmed.

JUDGMENT ACCORDINGLY.

Holcomb, C. J., concurs. Sedgwick, J., absent and not sitting.