STATE OF NEBRASKA, APPELLEE, V. ANTONIA A. DREW, APPELLANT.

344 N.W.2d 923

Filed March 2, 1984. No. 83-431.

James Martin Davis, for appellant.

Paul L. Douglas, Attorney General, and Michaela M. White, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant, Antonia A. Drew, appeals from her

conviction for manslaughter and her sentence to 10 years' imprisonment.

The evidence shows that on the morning of October 6, 1982, the defendant and the victim, Sandra Shepherd, were involved in an argument on the sidewalk at 24th and Franklin Streets in Omaha, Nebraska. Witnesses testified that they heard shouting between the two women and saw what appeared to be a scuffle. The defendant testified that Shepherd had begun an argument with her, cursed at her, and had threatened her. The defendant testified that Shepherd picked her up and threw her against a van. During the scuffle, the defendant pulled a gun from her pocket. The defendant testified that when she attempted to hit Shepherd in the head with the gun, the gun discharged accidentally, wounding Shepherd.

The bullet entered above the left eye and lodged in the brain of the victim. The defendant ran from the scene but surrendered to the police on October 7, 1982. The victim was taken to St. Joseph's Hospital where she died on October 12, 1982, as a result of the gunshot wound.

When the defendant surrendered to the police she was arrested, given *Miranda* warnings, and charged with assault. After the victim died the defendant was charged with second degree murder. Following trial to a jury she was convicted of manslaughter and sentenced to 10 years' imprisonment.

The defendant contends that it was error for the trial court to refuse to give a tendered instruction on the defense of accident or excusable homicide; that it was error to submit manslaughter to the jury; and that it was error to exclude certain evidence offered for the purposes of impeachment.

The defendant requested an instruction that, although she did not rely on the defense of self-defense, she was privileged to use force in protecting herself; and if such action unintentionally and unexpectedly caused the death of the victim, the de-

fendant could not be found guilty of second degree murder or manslaughter. The defendant also requested an instruction that the burden was upon the State to prove, beyond a reasonable doubt, that the killing was not accidental.

The court refused to give the requested instructions. However, the court did instruct on the defense of justification or self-defense, in accordance with the provisions of Neb. Rev. Stat. § 28-1409 (Reissue 1979).

The defendant contends that the failure to give the requested instructions left the jury with no other choice but to convict her of manslaughter, even if they concluded that the death was the result of an accident.

Neb. Rev. Stat. § 28-305(1) (Reissue 1979) provides: "A person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act."

Drew argues that this statute requires a conviction of manslaughter whenever the evidence shows that a death occurred as the result of some act by the defendant during a sudden quarrel. Drew contends that the jury must be instructed that an accidental death resulting from the use of justifiable force is a defense to a charge of manslaughter. In her brief Drew states the following rule: "If the blow itself was *privileged*, a death unexpectedly and unintentionally resulting therefrom is excusable." (Emphasis supplied.) Brief for Appellant at 14.

As the rule quoted above indicates, the focus of the inquiry is not whether the gun discharged *accidentally* but, rather, whether the defendant was acting lawfully at the time the gun discharged. The defendant must establish that the use of the gun was privileged at the time it discharged. The threatening use of a firearm is an unlawful assault sufficient to convict one of manslaughter, when defined as causing the death of another unintentionally while

in the commission of an unlawful act. § 28-305(1). Similarly, the accidental discharge of a gun, the use of which was not justified under the circumstances, is not a defense to manslaughter when the killing occurred upon a sudden quarrel.

In *Ford v. State*, 71 Neb. 246, 98 N.W. 807 (1904), we held that the fact that a gun discharged accidentally did not entitle the defendant to acquittal, as the pointing of the gun at another constituted an unlawful assault. No issue of self-defense was raised by the facts in that case.

In *State v. Archbold*, 178 Neb. 433, 436, 133 N.W.2d 601, 603 (1965), we held that the proper defense for such use of a gun is self-defense: "We consider defendant's assignments of error as designated and in the order listed in his brief. Number I involves the giving of instruction No. 13, which reads: 'You are further instructed "the intentional pointing of a loaded pistol at a person is ordinarily an unlawful assault, and when under these circumstances the pistol is unintentionally discharged and a person killed, such acts constitute manslaughter".' Defendant does not deny that this is a correct statement of law, but insists that when it is applied to the facts in this case it is erroneous and prejudicial. This instruction is derived from Ford v. State, 71 Neb. 246, 98 N.W. 807, 115 Am. S. R. 591, which involved the accidental discharge of a gun intentionally pointed at the deceased. Self-defense was not an issue in that case. Defendant argues that in this case the instruction is equivalent to directing a verdict of guilty. It is a sufficient answer to defendant's contention to say that *except for the issue of self-defense*, the defendant would be guilty of manslaughter on his own testimony if the jury found that he intentionally pointed the gun at the deceased." (Emphasis supplied.)

In *People v. Piorkowski*, 41 Cal. App. 3d 324, 115 Cal. Rptr. 830 (1974), it was held that the use of a gun which was clearly in excess of reasonable force

renders the *statutory* defense of accidental killing inapplicable. Thus, the reasonableness of the force used in self-defense is the primary consideration in determining whether an accident could excuse the defendant from liability.

In *James Gunn, Jr. v. State of Indiana*, 174 Ind. App. 26, 31-32, 365 N.E.2d 1234, 1238-39 (1977), the court discussed the relationship between the assertion that the killing was accidental and the assertion that the defendant acted in self-defense: "First, the theory of self-defense itself embraces intentional as well as accidental killings. 1 Wharton's Criminal Law and Procedure, § 213, p. 464, 465 (1957). In *McDermott v. State, supra*, at 195, our Supreme Court held:

" 'In all cases where the killing of the assailant is purposely done by the assaulted party, he must have acted under the belief that such killing was necessary to preserve his own life, or to save himself from great bodily harm, to render the killing excusable. We do not mean to say, however, that to render the killing excusable the assaulted party must have acted under the belief that the death of the assailant was necessary. As we have said, in proper cases the assaulted party has the right to meet force with force; and if, in a proper defence, death results to the assailant, the killing may be excusable without a belief on the part of the assaulted party that it was necessary for his own safety. In such cases the defence is purposely made, *but the killing is not purposely done. It is simply the result of the defence. Runyan v. State*, 57 Ind. 80 (26 Am. R. 52); Whart. Crim. Law, sec. 1019; Hor. & Thomp. Cases on Self-Defence, 492.' (Emphasis added).

"Thus, self-defense is available to the accused who accidentally kills his assailant while properly exerting force to assure his own safety.

"Second, and similarly, because the proper exercise of the right to defend oneself is a lawful act, such an act may satisfy the requirement that the ac-

cused be engaged in a lawful act when a killing occurs accidentally. This context is explained in a Virginia case, *Valentine v. Commonwealth, supra* [187 Va. 946, 953], 48 S.E.2d [264 (1948)] at 267-268, wherein that court quoted 40 C.J.S. *Homicide* § 112c, p. 981:

" 'Ordinarily the law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional, particularly where the facts of the case are not such as would make such law applicable. However, *where the defense of excusable homicide by misadventure is relied on, the principles of self-defense may be involved not for the purpose of establishing defense of self, but for the purpose of determining whether accused was or was not at the time engaged in a lawful act; and it has been held that in such case the right, but not the law, of self-defense is invoked.* Accused is entitled to an acquittal where he was lawfully acting in self-defense and the death of his assailant resulted from accident or misadventure, as where in falling he struck or overturned an object and thereby received injuries resulting in his death, *or where in a struggle over the possession of a weapon it was accidentally discharged.'* (Emphasis added)."

Self-defense was the proper defense under the facts of the present case. If the force used was justified, the act was not an unlawful one and the accident flowing therefrom is excused.

The trial court was required to instruct on the defense of self-defense, and the instructions requested by the defendant were properly refused. The facts show that in the course of the quarrel Drew attempted to hit the victim with a dangerous weapon. The only issue raised was whether the use of the gun was justified under the circumstances. That issue was submitted to the jury.

The defendant next argues that it was error for the court to instruct on manslaughter, over her objection. The evidence supports the giving of the in-

struction. It is undisputed that Shepherd died as a result of a shot fired from the gun held by Drew. The evidence shows that Shepherd and Drew were involved in a quarrel. The jury could find that Drew did not intend to shoot Shepherd but that Drew was in the commission of an unlawful act, an assault or an assault and battery, at the time the gun was discharged. Under these facts an instruction on the elements of both types of manslaughter as embodied in § 28-305(1) was proper.

When, in a prosecution for murder, the evidence will support a finding of manslaughter, the trial court is required to give such an instruction. Neb. Rev. Stat. § 29-2027 (Reissue 1979) provides: "In all trials for murder the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it be murder in the first or second degree, or manslaughter; and if such person be convicted by confession in open court, the court shall proceed by examination of witnesses in open court, to determine the degree of the crime, and shall pronounce sentence accordingly."

In *Bourne v. State*, 116 Neb. 141, 216 N.W. 173 (1927), we held the provisions of this statute to be mandatory. In *State v. Worley*, 178 Neb. 232, 132 N.W.2d 764 (1965), it was held that it was not prejudicial error to give an instruction on manslaughter in a prosecution for second degree murder. See, also, *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982), in which § 29-2027 was held to require an instruction on such lesser degrees of homicide as find support in the evidence.

The defendant's final contention on appeal is that it was error for the trial court to exclude certain evidence offered for the purpose of impeachment. In particular, Drew contends that it was error to exclude a taped statement given to police by Otis Cullum, a witness who was in the vicinity of 24th and Franklin at the time the killing occurred. In his statement to the police Cullum stated that he did not

see Drew make any motions with her hands. At trial he testified that he saw Drew raise her hands. On cross-examination Drew's counsel read portions of the taped statement to Cullum. Cullum admitted that he did not tell the police what he had testified to at trial.

The issue was decided in *State v. Packett*, 206 Neb. 548, 294 N.W.2d 605 (1980), which is controlling here. When a nonparty witness admits making earlier statements contradicting his testimony at trial, the earlier statements are not admissible for purposes of impeachment.

There being no error, the judgment is affirmed.

AFFIRMED.