STATE OF NEBRASKA, APPELLEE, V.
STUART R. PRUETT, APPELLANT.

638 N.W.2d 809

Filed February 1, 2002.   No. S-01-187.

100

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Stuart R. Pruett, was convicted by a district court jury of manslaughter by unintentionally causing another's death while committing the offense of reckless assault. Pruett was also convicted of using a weapon to commit a felony. On appeal, Pruett argues that he cannot be convicted of use of a weapon to commit a felony when the underlying felony is an unintentional crime. He further claims that the district court erred in various respects regarding evidentiary and instruction issues. We affirm Pruett's conviction and sentence for manslaughter but set aside the verdict and vacate the sentence for use of a weapon to commit a felony because both manslaughter and reckless assault are unintentional crimes.

## BACKGROUND

Pruett was charged in a two-count information with manslaughter and use of a weapon to commit a felony after he unintentionally shot and killed Joseph Curtis Wakan. Count I of the information charged that Pruett killed Wakan unintentionally while committing the unlawful act of assault in the second degree by recklessly causing serious bodily injury to Wakan with a dangerous instrument. Pruett filed a motion to quash count II, use of a weapon to commit a felony, because he was charged with using a weapon to commit an unintentional act. The district court overruled the motion to quash, and Pruett appealed. We determined that there was not a final, appealable order and dismissed the appeal for lack of jurisdiction. *State v. Pruett*, 258 Neb. 797, 606 N.W.2d 781 (2000).

At trial, Pruett's fiance, Michelle Strange, testified that Pruett purchased a .25-caliber semiautomatic gun in June 1998. After the purchase, Pruett and Strange took the gun out in the country and fired it. Strange testified that it fired easily. She stated that on June 30, she and Pruett met his friends, Shane Chandler, James Gates, and Wakan at a truckstop. Pruett then drove them

to his home in Lincoln. On the way to Lincoln, Pruett showed the three friends the gun.

Chandler testified that Pruett showed him and his companions a gun while in the car and that when the group arrived at Pruett's residence, they sat down, started talking, and smoked marijuana. He believed that the gun was set on the coffee table. He stated that after the group sat there for awhile, Pruett got up and fired a round from the gun into a telephone book. Pruett then laughed because his actions made everyone jump. At that point, the group began asking Pruett questions about how the gun worked and asked him to unload the gun, reload it, and cock it. Pruett then demonstrated these techniques and let them hold the gun.

Chandler testified that after Pruett showed the gun to the group, they smoked more marijuana. He stated that at various times, Pruett picked up the gun and pointed it at several of the people in the room. According to Chandler, Wakan went to the kitchen to get something to eat, and while he was gone, Pruett dug the empty bullet out of the telephone book. Pruett told Chandler that "he was going to mess with Wakan, play with him." Pruett then put two pieces of the bullet from the telephone book together so that they looked like a normal bullet and placed the "dummy round" in the top of the clip. Pruett then showed Chandler that after the gun was cocked and the trigger pulled, nothing would happen. Pruett then took the dummy round out, put it back together, and loaded it into the top of the clip. As Pruett was loading the gun, Wakan came out of the kitchen, and Pruett showed Wakan the dummy round as it was being placed in the top of the clip. Chandler testified that Pruett then raised the gun, fired it, and instead of a blank round, the gun fired an actual round, striking Wakan. Wakan was later pronounced dead.

In a taped interview given to police, Pruett stated that he purchased the gun for protection and that the gun was very easy to fire but did not necessarily have a hair trigger. According to Pruett, he had been playing with the gun by taking the clip out so it could not fire and then aiming it at people. He admitted smoking marijuana and firing a round into the telephone book to scare everyone and later using that bullet to make a dummy

round. He showed Wakan how the dummy round worked, popped the dummy round out, moved his hand to the side while holding the gun, and the gun went off. Pruett then assisted the others in getting medical assistance for Wakan.

During trial, Pruett objected to testimony that he had smoked marijuana on the night Wakan was killed. He argued that such evidence was uncharged misconduct and that under Neb. Rev. Stat. § 27-404 (Reissue 1995), the State was required to show the purpose for which the testimony was offered. He also moved that any portion of his statement referring to marijuana use be redacted. The trial court determined that the evidence was not subject to § 27-404 and overruled Pruett's motion and objections. Pruett proposed a jury instruction consistent with his objections, but the requested instruction was not given. The court did instruct the jury that evidence Pruett may have been smoking marijuana was received for the purpose of describing the circumstances surrounding Wakan's death. The instruction stated that "[s]uch evidence is not admissible to prove Mr. Pruett's character in order to show that he acted in conformity therewith and you may not consider this evidence for such purpose."

Dr. Matthias Okoye, a forensic pathologist, testified that an autopsy was performed by one of his colleagues. Okoye reviewed the autopsy reports and photographs taken at the time of the autopsy. He also examined the organs and microscopic tissue sections taken at the autopsy. He opined that the cause of death was from a gunshot wound. During Okoye's testimony, autopsy photographs, exhibits 39 through 54, were entered into evidence over Pruett's hearsay objections. Pruett requested that the jury be instructed that they could not consider Okoye's testimony about facts and data not directly perceived by him. The court did not give the requested instruction.

At the end of the State's case, Pruett moved to dismiss the charge of use of a weapon to commit a felony. The motion was overruled. Pruett did not present any evidence. The jury was instructed on the statutory definition of "recklessly." Pruett requested that the jury also be instructed on the definition of "accident." The district court did not give the requested instruction.

The jury found Pruett guilty on both counts. Pruett's motion for a new trial was overruled, and he was sentenced. Pruett appeals.

## ASSIGNMENTS OF ERROR

Pruett lists 26 assignments of error, which, rephrased, are that the district court erred in (1) overruling his motion to quash, overruling his motion for a directed verdict, and instructing the jury on the count of use of a firearm to commit a felony; (2) allowing evidence that he smoked marijuana on the night Wakan was killed and refusing his requested jury instruction regarding marijuana use; (3) overruling his hearsay objection regarding Okoye's testimony about facts not directly perceived by Okoye and refusing his requested jury instruction; (4) refusing to instruct the jury on the definition of "accident"; and (5) overruling his motion to dismiss when there was insufficient evidence to convict him.

## STANDARD OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001).

■ Whether jury instructions given by a trial court are correct is a question of law. *State v. Taylor*, 262 Neb. 639, 634 N.W.2d 744 (2001).

## ANALYSIS

### CONVICTION OF USE OF WEAPON TO COMMIT FELONY

Pruett contends that he cannot be convicted of both manslaughter and use of a weapon to commit a felony because both manslaughter and the act of reckless assault are unintentional crimes. Pruett argues that a person can be convicted of use of a weapon to commit a felony only when the underlying felony is an intentional crime.

■ Neb. Rev. Stat. § 28-1205(1) (Reissue 1995) provides:

Any person who uses a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state or who unlawfully possesses a firearm, knife, brass or iron knuckles, or any other deadly weapon during the commission of any felony which may be prosecuted in a court of

this state commits the offense of using a deadly weapon to commit a felony.

In *State v. Ring*, 233 Neb. 720, 724, 447 N.W.2d 908, 911 (1989), applying principles of statutory construction, we held that the language " 'to commit any felony' " in § 28-1205 is synonymous with " 'for the purpose of committing any felony.' " We further explained that the purposes behind § 28-1205 are to discourage individuals from employing deadly weapons in order to facilitate or effectuate the commission of felonies and to discourage individuals from carrying deadly weapons while they commit felonies. We then stated, "It cannot reasonably be said that § 28-1205 will dissuade a person from using a deadly weapon to commit an unintentional felony; the two concepts are logically inconsistent." *Ring*, 233 Neb. at 724, 447 N.W.2d at 911. As a result, we concluded that when the felony which served as the basis of the use of a weapon charge was an unintentional crime, the accused could not be convicted of use of a weapon to commit a felony.

Under Neb. Rev. Stat. § 28-305(1) (Reissue 1995), "[a] person commits manslaughter if he kills another without malice, either upon a sudden quarrel, or causes the death of another unintentionally while in the commission of an unlawful act." Pruett was convicted of unintentionally causing the death of Wakan while in the commission of a second degree assault under Neb. Rev. Stat. § 28-309 (Cum. Supp. 2000). A person commits second degree assault under § 28-309 if he or she: "(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument; [or] (b) Recklessly causes serious bodily injury to another person with a dangerous instrument . . . ." Pruett was specifically charged with reckless assault. He was not charged with intentionally assaulting Wakan, and the jury was instructed on only reckless assault.

Although Pruett was charged under § 28-305 with unintentionally causing Wakan's death, the State, however, argues that Pruett intentionally committed the crime of reckless assault and, thus, committed a felony which can serve as the basis for his conviction of use of a weapon to commit a felony.

Neb. Rev. Stat. § 28-109(19) (Reissue 1995) provides:

Recklessly shall mean acting with respect to a material element of an offense when any person disregards a substantial

and unjustifiable risk that the material element exists or will result from his or her conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to the actor, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

■ In *State v. Kistenmacher*, 231 Neb. 318, 436 N.W.2d 168 (1989), we discussed the extent to which a reckless act involves a conscious choice in a course of action but held that the definition of "recklessly" contained in § 28-109(19) is an objective one, thereby making testimony as to the defendant's subjective intent irrelevant. Our decision in *Kistenmacher* illustrates that reckless assault is not an intentional crime. Although recklessness can involve some intent on the part of the actor, for example, the act of intentionally pointing a gun at another person, this does not transform the crime of reckless assault into an intentional crime. Reckless assault requires not just the act of reckless behavior, but the result of serious bodily injury. A person can be guilty of reckless assault when he or she acted recklessly but did not intend serious bodily injury to occur. Thus, the state of mind to convict for reckless assault does not rise to the level of "knowing" or "intentional." See, generally, *State v. Hemmer*, 3 Neb. App. 769, 531 N.W.2d 559 (1995) (holding that no crime of attempted reckless assault of police officer exists because reckless is not intentional mens rea). See, also, *Jenkins v. State*, 640 So. 2d 1053 (Ala. Crim. App. 1993) (sentence could not be enhanced due to commission of felony with weapon when underlying felony was reckless assault).

We hold that reckless assault is not an intentional crime. As a result, under *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), Pruett could not be convicted of using a weapon to commit a felony when the underlying felony was manslaughter due to unintentionally causing Wakan's death while in the commission of reckless assault. We set aside the verdict and vacate the sentence for use of a weapon to commit a felony.

### EVIDENCE REGARDING MARIJUANA USE

Pruett contends that evidence that he smoked marijuana was uncharged misconduct, subject to § 27-404. Pruett argues that

the trial court erred in failing to require the State to identify the purpose for offering the evidence and in failing to hold an evidentiary hearing. He does not argue that the evidence was inadmissible under Neb. Rev. Stat. § 27-403 (Reissue 1995) as being more prejudicial than probative.

Section 27-404 provides in part that "[e]vidence of a person's character or a trait of his or her character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion . . . ." Evidence of uncharged misconduct, often referred to as evidence of "prior bad acts" may be admitted under § 27-404 for other purposes, but the proponent of the evidence must prove to the court outside the presence of the jury that the defendant committed uncharged misconduct. § 27-404(3). In addition, the proponent of the evidence must state on the record the specific purpose or purposes for which the evidence is being offered and the court must state the purpose or purposes for which the evidence is received. See *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999). We have held, however, that where uncharged misconduct is not evidence of prior bad acts, § 27-404 does not apply. *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000).

Here, the State did not introduce evidence that Pruett smoked marijuana on a prior occasion or as evidence of his character to prove that he acted in conformity with that behavior on a later occasion. Instead, Pruett's action of smoking marijuana was contemporaneous with his other acts immediately before Wakan was shot, and the State offered the evidence to explain the circumstances surrounding Wakan's death. The evidence that Pruett smoked marijuana shortly before Wakan was killed was not evidence of prior bad acts subject to § 27-404. Instead, the evidence was relevant to show that Pruett was acting in a reckless manner at the time that he shot Wakan. See, generally, *State v. Canbaz, supra*. Nevertheless, the court gave a limiting instruction to the jury. We hold that under these circumstances, § 27-404 is not applicable. We conclude that Pruett's assignments of error regarding this issue are without merit.

## HEARSAY OBJECTIONS

Pruett contends that the court erred in allowing Okoye to testify regarding facts provided to him by others and not perceived

by him directly. He objected on the basis of hearsay to the introduction into evidence of the autopsy photographs.

Neb. Rev. Stat. § 27-703 (Reissue 1995) provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We have held that § 27-703 contemplates admission of an expert's opinion based on hearsay supplying facts or data for that opinion, rather than requiring firsthand knowledge as the only source of information for an expert's opinion. *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985). Further, an expert may rely on hearsay facts or data that are reasonably relied on by experts in that field. See *State v. Whitlock*, 262 Neb. 615, 634 N.W.2d 480 (2001). Thus, a doctor who did not directly treat a patient may provide expert testimony regarding the patient, and any lack of firsthand knowledge goes to the weight of the opinion. See *Gibson v. City of Lincoln, supra.*

Okoye could give his opinion because he relied on data that are reasonably given by other experts in his field. Pruett's argument that Okoye could not testify regarding facts that he did not perceive directly is without merit.

Pruett also objected to the introduction into evidence of autopsy photographs on the basis of hearsay. The admission of hearsay is controlled by the Nebraska Evidence Rules. *State v. Whitlock, supra.* In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Id.* "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Rev. Stat. § 27-801(3) (Reissue 1995). A statement for purposes of § 27-801 "is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him as an assertion." § 27-801(1).

Here, the autopsy photographs were not oral or written assertions, nor were they nonverbal conduct of a person. Under

these circumstances, photographs are demonstrative evidence and are not hearsay. See *Kucki v. State*, 483 N.E.2d 788 (Ind. App. 1985), citing *Bergner v. State*, 397 N.E.2d 1012 (Ind. App. 1979). See, generally, *State v. Lang*, 197 Neb. 47, 246 N.W.2d 608 (1976); *State v. Henderson*, 100 N.M. 260, 669 P.2d 736 (N.M. App. 1983).

Concerning Okoye's testimony, Pruett requested the following jury instruction, which was refused by the district court:

> The facts or data upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. A witness has testified in this case about facts or data which were not perceived by him, but which were relied upon by him in forming his opinion. You may consider such facts or data in determining what weight, if any, to give to the expert's opinion. However, you may not consider the witness' testimony about facts or data not directly perceived by him as evidence of the truth of such facts or data.

The court refused the requested instruction and instead instructed the jury as follows:

> A witness who has special knowledge, skill, experience, training or education in a particular area may testify as an expert in that area. You may adopt, or not, his or her conclusions, according to your own best judgment. You determine what weight, if any, to give to an expert's testimony just as you do with the testimony of any other witness.
>
> In determining the weight to be given such testimony, you should consider:
>
> 1. The education, training, experience and knowledge of the expert;
> 2. The reasons given for the expert's opinion; and
> 3. The sources of the expert's information.

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Quintana*, 261 Neb. 38, 621 N.W.2d 121 (2001). All the jury instructions must be read together, and

if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

In this case, the court's instruction was a correct statement of the law, adequately covered the issue, and was supported by the evidence. We conclude that the trial court did not err in refusing Pruett's requested instruction and that his assignments of error regarding this issue are without merit.

### JURY INSTRUCTION ON DEFINITION OF ACCIDENT

Pruett contends that he was entitled to an instruction on the definition of "accident." He requested that the jury be instructed, " 'Accident' shall mean a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Instead, the court instructed the jury using the following statutory definition of "recklessly":

> Recklessly means acting with respect to a material element of an offense when any person disregards a substantial and unjustifiable risk that the material element exists or will result from his or her conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to the actor, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

The focus of the inquiry in this case is not whether the gun discharged accidentally. Instead, the question is whether Pruett was acting recklessly at the time the gun discharged. The threatening use of a firearm is an unlawful assault sufficient to convict a person of manslaughter when defined as causing the death of another unintentionally while in the commission of an unlawful act. *State v. Drew*, 216 Neb. 685, 344 N.W.2d 923 (1984). Thus, if a person is found to be acting recklessly at the time the gun discharged, whether the gun discharged by accident is not at issue and is not a defense to reckless assault. See, generally, *id.* at 688, 344 N.W.2d at 925 ("the accidental discharge of a gun, the use of which was not justified under the circumstances, is

not a defense to manslaughter when the killing occurred upon a sudden quarrel").

The court properly instructed the jury regarding the elements of the offense and the definition of "recklessly." We conclude that Pruett was not entitled to an instruction on the definition of the term "accident."

### SUFFICIENCY OF EVIDENCE

Pruett contends that the evidence was insufficient to convict him of manslaughter. We have reviewed this assignment of error and find it to be without merit.

### CONCLUSION

We hold that Pruett could not be convicted for use of a weapon to commit a felony when the underlying felonies were manslaughter and reckless assault. Accordingly, we affirm Pruett's conviction and sentence for manslaughter but set aside the verdict and vacate the sentence for use of a weapon to commit a felony. We determine that all of his remaining assignments of error are without merit, and we affirm his conviction for manslaughter.

AFFIRMED IN PART, AND IN PART
SET ASIDE AND VACATED.