IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DAVIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

IMHOTEP A. DAVIS, APPELLANT.

Filed April 7, 2026.    No. A-24-918.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Gerald L. Soucie for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

MOORE, PIRTLE, and FREEMAN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Following a jury trial in the district court for Douglas County, Imhotep A. Davis was convicted of manslaughter, first degree assault, two counts of use of a firearm to commit a felony, possession of a firearm by a prohibited person, unlawful possession of a firearm on school grounds, and tampering with evidence. On appeal, Davis challenges issues related to jury instructions, certain charges submitted to the jury, his sentences, and ineffective assistance of trial counsel. Based on the reasons that follow, Davis' convictions and sentences are affirmed.

## II. BACKGROUND

The State charged Davis in an amended information with seven felonies: count I, second degree murder, a Class IB felony; count II, use of a deadly weapon (firearm) to commit a felony, a Class IC felony; count III, first degree assault, a Class II felony; count IV, use of a deadly weapon

(firearm) to commit a felony, a Class IC felony; count V, possession of a firearm by a prohibited person, a Class ID felony; count VI, unlawful possession of a firearm on school grounds, a Class IV felony; and count VII, tampering with physical evidence, a Class II felony. The charges arose from a shooting that occurred at a party in Omaha, Nebraska, in the early morning hours of November 13, 2022.

## 1. TRIAL EVIDENCE

At 4:08 a.m. on November 13, 2022, two Omaha police officers, Sean DeBuhr and Brock Gentile, were on patrol in northeast Omaha when they heard numerous gunshots in the area and headed in the direction of the noise. While enroute, dispatch gave them a specific address. The officers arrived at the address just a few minutes after hearing the gunshots. DeBuhr and Gentile described the scene as "very chaotic" and "mass chaos," with people and vehicles fleeing the area. The building located at the address was originally a residence, although at the time it was being used by several different businesses.

As DeBuhr and Gentile approached the building, they saw one victim outside of the building who was being attended to by other police officers who had just arrived. DeBuhr and Gentile entered the building through the front door, and it was very dark inside. There were several witnesses inside and there were "[bullet] casings strewn about everywhere." The relevant area was a space that was "semi-split into two areas" by a partial wall. On one side of the partial wall, there was a DJ area set up.

The officers found Karly Wood, a 20-year-old female, on the floor near the DJ area. She appeared to have suffered several gunshot wounds. There were other individuals around Wood, who appeared to be trying to help her. Wood was taken by ambulance to a hospital, where she died. An autopsy revealed that the cause of death was multiple gunshot wounds; it also revealed that Wood had suffered eight separate gunshot wounds. Two bullets were recovered from Wood's body during the autopsy.

Eight other individuals were shot at the scene as well, including Davis. Relevant to this appeal, an individual named Ronald Arceneaux was one of the other victims. He required surgery and a bullet was removed and recovered from his body. The charges against Davis for first degree assault (count III) and use of a firearm to commit a felony (count IV) arose out of Arceneaux being shot.

During the investigation, surveillance videos were recovered from several cameras, including (1) the back of the building where the shootings took place, (2) a nearby parking lot of an elementary school, and (3) the hospital that Davis went to after being shot. After Davis was brought to the hospital, the hospital notified law enforcement that Davis was a shooting victim, which led to the recovery of a 2018 gray Chevy Malibu that Davis drove to the party. That vehicle was processed a day or two later and a Glock 9mm handgun was found in the center console. This was the only gun recovered during the investigation and it was definitively linked to Davis. The surveillance video from the hospital showed Davis and the clothing he was wearing, which was important for identification purposes.

The surveillance videos showed that many of the partygoers had parked in the nearby school parking lot, which helped identify many of the individuals at the party, as well as when and how they arrived and departed. Regarding Davis, the surveillance video from the parking lot, along

with the surveillance video from the back of the building, showed that he arrived at the school parking lot at 3:34 a.m. He met up with other individuals in the parking lot, and at 4:01 a.m., he and several of those individuals started walking toward the party. The surveillance video also showed, based on people's reactions, that the shooting occurred at 4:06 a.m. Additionally, at 4:07 a.m., the surveillance video showed Davis running back to the school parking lot holding a gun. He then slid the gun across the roof of the Chevy Malibu to an individual who was standing on the other side of the vehicle. A detective with the Omaha Police Department testified that the slide of the gun was "locked to the rear," indicating that every bullet had been fired from both the chamber of the gun and the magazine that was inserted in the gun.

The evidence collected included many bullets, bullet casings, and bullet fragments, as well as Davis' gun. The subsequent ballistics analysis of that evidence showed that there were at least four guns that fired bullets inside the building. Davis' gun was one of those four guns, and it fired 14 of the 24 casings found inside the building. The evidence also established that Glock firearms, such as Davis' gun, have "polygonal rifling," rather than "conventional rifling." The type of rifling indicates the process used to manufacture the gun barrel. There were at least four different firearms used at the scene of the crime, but only one set of bullets that were fired from a polygonally rifled gun barrel. The bullets recovered from Wood and Arceneaux were fired from a polygonally rifled barrel. There was also DNA evidence found on bullet casings inside the building, the exterior of the recovered gun, and from blood on bullet casings and on the floor of the building that implicated Davis.

Several of the partygoers testified. Shannon Jackson, one of the shooting victims, testified that the party was pretty crowded and that there were maybe 50 to 60 people there when she arrived at around 3:30 a.m. Jackson explained that she was leaving the party and was just outside the front door when she was shot. Jackson testified that she did not see or hear any arguments or fights before the shooting.

Breanna Reid testified that she worked the party as a "bottle service" girl, providing drinks to the people at the party, until about 2 a.m., after which she stayed at the party with some friends. Reid stated that she was with those friends at a folding table near the DJ area, and that she had a clear line of sight to the DJ area. A few minutes before the shooting, Reid noticed several men arguing in front of the DJ area. She testified that when the shooting occurred, she saw two men firing guns, one was Davis and the other was a man that she could not identify.

### 2. JURY VERDICT AND SENTENCING

Following trial, the jury found Davis guilty of manslaughter on count I, rather than second degree murder, and guilty on the other six charges. The district court subsequently sentenced Davis to an aggregate total of 129 to 162 years' imprisonment.

### III. ASSIGNMENTS OF ERROR

Davis, now represented by different counsel on appeal, assigns, restated, that the district court erred in: (1) failing to instruct the jury on self-defense, (2) instructing the jury in instruction No. 7 that it "need not agree unanimously" to find him guilty of manslaughter, (3) submitting counts III and IV to the jury, and (4) imposing excessive sentences on counts V, VI, and VII. Davis also assigns that his trial counsel provided ineffective assistance in multiple ways.

## IV. STANDARD OF REVIEW

When a party assigns as error the failure to give an unrequested jury instruction, an appellate court will review only for plain error. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Adams*, 320 Neb. 316, 27 N.W.3d 23 (2025).

When reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Briggs*, 317 Neb. 296, 9 N.W.3d 632 (2024).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Briggs, supra.* In reviewing a claim of ineffective assistance of counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. SELF-DEFENSE JURY INSTRUCTION

Davis first assigns that the district court erred in failing to give the jury a self-defense instruction. He contends that such an instruction was necessary because he was shot in the back by one or more individuals before he fired a single shot. Davis did not request a self-defense instruction, but he argues the court should have given one on its own motion.

Whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence, and it must, on its own motion, correctly instruct on the law. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023). A trial court is not obligated to instruct the jury on matters which are not supported by evidence in the record. *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Adams, supra*. However, Davis' failure to request a self-defense instruction affects the standard of review. When a party assigns as error the failure to give an unrequested jury instruction, an appellate court will review only for plain error. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019). Plain error may be found on appeal when

- 4 -

an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

Self-defense is a statutorily defined affirmative defense in Nebraska. *State v. Adams*, 320 Neb. 316, 27 N.W.3d 23 (2025). Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) provides, in relevant part, that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."

The Nebraska Supreme Court has interpreted § 28-1409 to mean that "to successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force [and] the force used in defense must be immediately necessary and justified under the circumstances." *State v. Adams*, 320 Neb. at 336, 27 N.W.3d at 41. Only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense. *Id.* If the trial evidence does not support a claim of self-defense, the jury should not be instructed on it. *Id.*

Davis argues that a self-defense jury instruction was necessary because deadly force was used first against him without any evidence of provocation on his part. Davis claims that someone shot him first, in the back, and that he then justifiably returned fire. However, Davis does not cite to anything in the record to support that claim. There was evidence at trial that Davis was shot, but Davis presented no evidence regarding his injuries or the fact that he was shot in the back. Exactly what happened inside the building regarding the shooting was unclear; there was no evidence regarding who shot who first, or why, or who was targeted. Further, the purported fact of being shot in the back, without more, does not support a reasonable inference that Davis was not the first aggressor. To the extent Davis relies on facts not in evidence, it cannot be said that the court had a duty to instruct on self-defense.

In addition, even if we assume Davis did not provoke the use of force against him (someone shot at Davis first), the force he used was unjustified under the circumstances. Davis repeatedly fired his gun in a dark, crowded area where the risk of hitting others was obviously great. The evidence showed that 14 of the 24 casings found inside the building were from Davis' gun. All of the bullets in his gun had been fired when he arrived at the parking lot after the shooting. Davis points to no evidence showing that he believed the force he used was necessary to protect himself under the circumstances.

There was no evidence to support a self-defense jury instruction. Accordingly, the district court did not commit plain error in failing to give such instruction.

## 2. JURY INSTRUCTION NOS. 7 AND 8

Davis next assigns that the district court erred in instructing the jury in instruction No. 7 that it "need not agree unanimously" to find him guilty of manslaughter. Davis did not object to this instruction, or any jury instructions, or offer alternative instructions at trial. Absent plain error indicative of a probable miscarriage of justice, the failure to object to a jury instruction after it has been submitted for review precludes raising an objection on appeal. *State v. Riley*, 281 Neb. 394, 796 N.W.2d 371 (2011). Accordingly, we review for plain error.

Instruction No. 7 stated that under count I of the amended information, the jury could find Davis guilty of murder in the second degree, guilty of manslaughter, or not guilty. It then set out the elements the State had to prove for murder in the second degree and manslaughter. Regarding manslaughter, the instruction stated:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the Defendant Imhotep A. Davis of the crime of Manslaughter are:

1. That [Davis] killed Karly Wood; and

2. That [Davis] did so (a) intentionally without malice upon a sudden quarrel; or (b) unintentionally while in the commission of an unlawful act, to wit: assault in the first degree as defined in Instruction No. 14; and

3. That [Davis] did so on or about November 13, 2022 in Douglas County, Nebraska.

B. EFFECT OF FINDINGS

Under the law, the elements described in 2(a) and 2(b) constitute a single offense. As a result, you need not agree unanimously on whether [Davis] intentionally without malice upon a sudden quarrel killed Karly Wood or, whether [Davis] unintentionally killed Karly Wood while in the commission of a[n] unlawful act, to wit: assault in the first degree, so long as you agree unanimously that the State has established beyond a reasonable doubt that [Davis] committed manslaughter on either of the theories described in 2(a) or 2(b).

Davis claims that this instruction, when read in conjunction with instruction No. 8, violated *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002).

Jury instruction No. 8 provided that under count II of the amended information, the jury could find Davis either guilty of use of a deadly weapon (firearm) to commit a felony, or not guilty. It further stated:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict [Davis] of Use of a Deadly Weapon (Firearm) to commit a Felony are:

1. That [Davis] did commit Murder in the Second Degree, or Manslaughter, which is the subject of Count [I] of the Information; and

2. That in the commission of said Murder in the Second Degree, or Manslaughter, a deadly weapon, to wit: a firearm, was used; and

3. That such use of a deadly weapon was intentional; and

4. That [Davis] did so on or about November 13, 2022 in Douglas County, Nebraska.

In *State v. Pruett, supra*, the court stated that under Nebraska statutory law, when the underlying felony for the use of a weapon charge is an unintentional crime, the defendant cannot be convicted of use of a weapon to commit a felony. See Neb. Rev. Stat. § 28-1205 (Reissue 2016). Davis argues that *Pruett* requires the predicate offense must be intentional and instruction No. 7 did not require a unanimous verdict on the intentional manslaughter theory. He argues the correct instruction for manslaughter must direct that if the jury does not unanimously agree that

manslaughter was committed "intentionally without malice upon a sudden quarrel," then it was to find him not guilty. Brief for appellant at 46.

We disagree. Manslaughter is a single offense that may be committed in different ways. See Neb. Rev. Stat. § 28-305 (Reissue 2016). Where a single offense may be committed in a number of different ways and there is evidence to support each of the ways, the jury need only be unanimous in its conclusion that the defendant violated the law by committing the act. *State v. Alexander*, 33 Neb. App. 872, 28 N.W.3d 104 (2025). It need not be unanimous in its conclusion as to which of several consistent theories it believes resulted in the violation. *Id.*

Instruction No. 7 allowed the jury to find Davis guilty of manslaughter either "intentionally without malice upon a sudden quarrel" or "unintentionally while in the commission of an unlawful act, to wit: assault in the first degree. . . ." Regardless which prong the jury found, there was an intentional felony, as the alleged predicate unlawful act was first degree assault. Further, instruction No. 8 specifically provided that a material element for the use of a weapon charge was "[t]hat such use of a deadly weapon was intentional." Thus, the jury understood that it was not permitted to find Davis guilty of use of a firearm to commit a felony without first finding him guilty of a predicate intentional felony. Accordingly, there was no plain error related to instructions Nos. 7 and 8.

### 3. Submission of Counts III and IV to Jury

Davis next assigns that the district court erred in submitting count III, first degree assault, and count IV, use of a firearm to commit a felony, to the jury. Both of these charges were related to the shooting of Arceneaux. However, Davis does not argue this assignment of error in his brief. The argument section of his brief that coincides numerically and alphabetically with the assignment of error regarding counts III and IV does not mention counts III and IV or why they should not have been submitted to the jury. Rather, the argument section states that Arceneaux did not testify at trial and was not subject to cross-examination. It further states that the State's theory of when and where Arceneaux was shot was contrary to Arceneaux's statement to law enforcement, and that his absence from trial was because he had an active warrant out for his arrest.

Davis has failed to assign and argue that the court erred in submitting counts III and IV to the jury. Accordingly, we do not address it. See *State v. Cartwright*, 320 Neb. 619, 29 N.W.3d 769 (2026) (to be considered by appellate court, party asserting alleged error must both specifically assign and specifically argue error in party's initial brief).

### 4. Excessive Sentences

Davis next assigns that the district court erred in imposing excessive sentences on counts V through VII in partial reliance on his convictions on counts I through IV. He argues "[i]n the event of reversal and remand on Counts [I], [II], [III], and [IV], there should be a remand for resentencing based on correct information." Brief for appellant at 47. Davis' assignment of error and related argument is predicated entirely on this court granting him relief on his assignments of error that relate to counts I through IV. Because we have determined that those assigned errors fail and we are not reversing or remanding counts I through IV, we need not address this assigned error further.

## 5. INEFFECTIVE ASSISTANCE OF COUNSEL

Davis next assigns that his trial counsel provided ineffective assistance in several ways. We first set forth the relevant legal framework and then address each of Davis' individual claims of ineffective assistance of counsel.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective assistance which is known to the defendant or is apparent from the record. See *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. See *id*.

An appellant sufficiently raises an ineffective assistance of counsel claim on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. See *id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. See *id*. Moreover, in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), *disapproved on other grounds, State v. Hagens*, 320 Neb. 65, 26 N.W.3d (2025), this court held that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. See *State v. Dap, supra*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. See *id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his defense. See *State v. Dap, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. See *id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *id*.

### (a) Claims 1 and 7

Davis' first claim of ineffective assistance of counsel is that his trial counsel was ineffective in "[failing] to present conclusive medical evidence on behalf of Mr. Davis establishing he was shot in the back with a 'thru and thru' wound with the bullet potentially striking and lodging in Mr. Davis' left hand." Brief for appellant at 12. Davis does not argue this assignment of error in his brief.

Davis' seventh claim of ineffective assistance of counsel is that his trial counsel was ineffective in "[failing] to seek DNA profile for the individual who fired shots designated '70 thru

73' and '61, 62, and 80' on Exhibit 356 that were clearly NOT fired by Mr. Davis or his associates." Brief for appellant at 13. Davis does not argue this assignment of error in his brief. Rather, he argues that Nebraska has a DNA database of convicted felons and his counsel should have requested that the known profiles of potential suspects be produced to see if they were the other shooters and he listed a number of individuals that should have been included.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). Claims of ineffective assistance of counsel are no exception. *Id.* On direct appeal in a criminal case, claims of ineffective assistance of counsel must be both specifically assigned and specifically argued in the appellant's brief. *Id.* Because Davis has failed to specifically argue his first and seventh claims of ineffective assistance of counsel, we do not consider them.

### (b) Claim 2

Davis assigns his trial counsel was ineffective because he "failed to request and submit a 'self-defense' instruction on Counts [I], [II], [III], and [IV] under . . . § 28-1409 when the evidence established that Mr. Davis was the first person shot in the back and two or more assailants were firing at him in a dark room." Brief for appellant at 12. We have already determined the district court did not err in failing to give a self-defense instruction as it was not warranted by the evidence. Accordingly, trial counsel was not ineffective in failing to request and submit a self-defense instruction. See *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument).

### (c) Claims 3, 4, and 5

Davis' third, fourth, and fifth claims of ineffective assistance of counsel are as follows: trial counsel was ineffective in that "at the close of the State's case [he] failed to move to dismiss Counts [I], [II], [III], and [IV] because of the State's failure to present any evidence that Mr. Davis was NOT acting in self-defense after being shot in the back and repeatedly fired upon by unknown assailants"; trial counsel was ineffective in that "[he] did not object to Instructions #7, #8, #9, and #10 for failure to include 'self-defense' as to all four counts and that NJI2d 7.2 be given"; and trial counsel was ineffective in that "[he] failed to object to Instruction #8 regarding use of a weapon to commit manslaughter as being in violation of *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002)." Brief for appellant at 12. Davis does not argue these assignments of error in his brief; he only restates the assignments of error in his argument section. An argument that does little more than to restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Accordingly, we do not address his third, fourth, and fifth claims of ineffective assistance of counsel.

### (d) Claim 6

Davis assigns his trial counsel was ineffective because he "failed to advise Mr. Davis to either waive jury or enter a 'no contest plea' to Counts [V] (possession of firearm by felon) and [VI] (possession of firearm on school grounds). 'Self-defense' would not apply to [counts V and VI] and possibility of a not guilty verdict was practically zero." Brief for appellant at 13. He argues

that waiving a jury trial or entering a no contest plea to counts V and VI would have simplified the case for the jury as to counts I through IV and VII, and would have made the evidence of prior convictions irrelevant and inadmissible. He further argues this would have allowed him to testify as to the circumstances under which he was shot in the back and the jury would have heard direct testimony that he returned fire in self-defense. He further argues his testimony would have been corroborated by the State's forensic evidence that at least two shooters were targeting him.

We conclude this claim of ineffective assistance of counsel is without merit because Davis cannot show how he was prejudiced. Even if these two counts had been handled without a jury, that would not have changed the State's evidence against Davis on the other counts or somehow allowed him to testify without the jury becoming aware of his prior felony convictions. See Neb. Rev. Stat. § 27-609(1) (Reissue 2016) (allows for impeachment of witness on cross-examination when witness has committed felony). In addition, the removal of counts V and VI from the jury would not have simplified the case. Accordingly, trial counsel was not ineffective for failing to advise Davis to waive a jury or plead no contest to counts V and VI.

## VI. CONCLUSION

Based on the reasons set forth in this opinion, Davis' convictions and sentences are affirmed.

AFFIRMED.

- 10 -