Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/14/2025 09:14 AM CST

State of Nebraska, appellee, v.
Jeffrey S. Adams, appellant.
___ N.W.3d ___

Filed November 14, 2025.    No. S-24-809.

1. **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.
2. **Rules of Evidence: Appeal and Error.** Findings of fact made by a district court pursuant to Neb. Evid. R. 404(3), Neb. Rev. Stat. § 27-404(3) (Cum. Supp. 2024), are reviewed by an appellate court for clear error.
3. **Criminal Law: Judgments: Appeal and Error.** An appellate court will affirm a trial court's ruling that the defendant committed an extrinsic crime, wrong, or act if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found with a firm conviction that the defendant committed the crime, wrong, or act.
4. **Rules of Evidence: Other Acts: Appeal and Error.** It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Evid. R. 403 and 404(2), Neb. Rev. Stat. §§ 27-403 (Reissue 2016) and 27-404(2) (Cum. Supp. 2024), and the trial court's decision will not be reversed on appeal absent an abuse of discretion.
5. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
6. **Rules of Evidence: Proof.** Under Neb. Evid. R. 404(3), Neb. Rev. Stat. § 27-404(3) (Cum. Supp. 2024), before a court can admit evidence of an extrinsic crime or bad act under rule 404(2), the State must prove by clear and convincing evidence, outside the presence of the jury, that the defendant committed the extrinsic crime or bad act.
7. **Rules of Evidence: Other Acts.** Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024), prohibits the admission of other bad

acts evidence for the purpose of demonstrating a person's propensity to act in a certain manner.

8. ____: ____. Evidence of other bad acts which is relevant for any purpose other than to show the actor's propensity is admissible under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024).

9. **Rules of Evidence: Other Acts: Words and Phrases.** Evidence that is offered for a proper purpose under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024), is often referred to as having "special" or "independent" relevance, meaning its relevance does not depend upon its tendency to show propensity.

10. **Rules of Evidence: Other Acts.** All relevant evidence is subject to the overriding protection of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), including other acts evidence.

11. **Rules of Evidence.** Evidence that is admissible under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024), may nevertheless be excluded under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), if its probative value is substantially outweighed by the danger of unfair prejudice.

12. **Rules of Evidence: Other Acts: Appeal and Error.** An appellate court's analysis under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024), considers (1) whether the evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith; (2) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice; and (3) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted.

13. **Appeal and Error.** Generally, only those issues specifically assigned and specifically argued on appeal will be considered by the appellate court.

14. **Rules of Evidence: Other Acts.** The admissibility of prior bad acts evidence under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2024), must be determined upon the facts of each case and is within the discretion of the trial court.

15. **Trial: Evidence.** Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party; only evidence tending to suggest a decision on an improper basis is unfairly prejudicial.

16. **Rules of Evidence: Other Acts: Time.** While remoteness in time may weaken the value of prior bad acts evidence, such remoteness does not, in and of itself, necessarily justify exclusion of that evidence.

17. **Trial: Evidence: Appeal and Error.** Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion

of the trial court, whose decision an appellate court will not reverse unless there is an abuse of discretion.

18. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

19. **Homicide: Intent: Words and Phrases.** The term "premeditated" means to have formed a design to commit an act before it was done.

20. **Homicide: Intent.** One kills with premeditated malice if, before the act causing death occurs, one has formed the intent or determined to kill the victim without legal justification.

21. **Homicide: Intent: Time.** No particular length of time for premeditation is required, provided the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death.

22. \_\_\_\_: \_\_\_\_: \_\_\_\_. The time required to establish premeditation may be of the shortest possible duration and may be so short that it is instantaneous, and the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed.

23. **Criminal Law: Intent: Circumstantial Evidence.** When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.

24. **Intent: Words and Phrases.** Premeditation is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.

25. **Homicide: Intent.** The manner or fashion in which the injury was inflicted may show a deliberate act and hence serve as evidence to support a finding of premeditation.

26. **Homicide: Intent: Juries.** A question of premeditation is for the jury to decide.

27. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

28. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the

evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

29. **Self-Defense.** To successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances.

30. **Self-Defense: Jury Instructions.** Only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense.

31. **Self-Defense: Jury Instructions: Evidence.** If the trial evidence does not support a claim of self-defense, the jury should not be instructed on it.

32. ____: ____: ____. It is not enough to merely show "any evidence" of self-defense to support an instruction thereon. Instead, the defendant must show any evidence in support of a legally cognizable theory of self-defense.

33. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

34. **Venue: Appeal and Error.** A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion.

35. **Venue: Juror Qualifications: Proof.** Voir dire examination provides the best opportunity to determine whether the moving party has met his or her burden and venue should be changed.

36. **Juror Qualifications: Waiver.** A party who fails to challenge the jurors for disqualification and passes the jurors for cause waives any objection to their selection.

37. **Appeal and Error.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

38. **Sentences: Appeal and Error.** When a sentencing error is noted on direct appeal, an appellate court can modify the sentence. Alternatively, an appellate court can vacate an invalid or erroneous sentence and remand a cause to the sentencing court for imposition of a lawful sentence.

Appeal from the District Court for Hamilton County: CHRISTINA M. MARROQUIN, Judge. Affirmed as modified.

Matthew J. McDonald, of Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ., and Mellor, District Judge.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Jeffrey S. Adams challenges his conviction for the 2023 first degree murder[1] of his wife. He focuses on admission of prior bad acts evidence[2] of domestic abuse in 1997 and 2015. We see no error or abuse of discretion there and find no merit to his other arguments challenging sufficiency of the evidence, refusal of a self-defense instruction, and denial of a change in venue. We affirm the judgment as modified to eliminate plain error in applying credit for time served to Adams' only sentence—life imprisonment.

## II. BACKGROUND

In this section, we first summarize the evidence at trial, viewing it in the light most favorable to the State. We then discuss the jury verdict and sentencing. We provide additional background, as necessary, later in the opinion.

### 1. Evidence at Trial

The State's theory of this case was that Adams beat and strangled his wife, Angela Adams, after the couple left a bar together and arrived home intoxicated. Adams did not dispute that he killed Angela, but he denied intending to do so.

The parties adduced testimony from multiple witnesses regarding the events leading up to Angela's death and the

---

[1] See Neb. Rev. Stat. § 28-303(1) (Cum. Supp. 2024).

[2] See, Neb. Evid. R. 403 and 404, Neb. Rev. Stat. §§ 27-403 (Reissue 2016) and 27-404 (Cum. Supp. 2024).

injuries that Adams inflicted upon her. They also offered numerous exhibits over the course of the 7-day jury trial.

(a) Events on February 25 and 26, 2023

Angela died on the couple's bedroom floor in the early morning hours of February 26, 2023. The evening before, she and Adams went out to dinner and met up with some friends at the bar. They both consumed alcohol. As they were leaving the bar around closing time, Adams was angry with Angela. He accused her of cheating on him. Multiple friends attempted to calm him down before the couple left to go home together in his vehicle.

Later that day, Angela's son opened the couple's bedroom door and found her lying face down on the floor in a pool of blood. She was not breathing and did not have a pulse. Adams had left the home several hours earlier.

The evidence collected from the couple's bedroom showed that there was an initial physical altercation at some point, either on the way home from the bar or once the couple arrived home, followed by another altercation in their bedroom that resulted in Angela's death. Law enforcement found the clothing that Angela had worn to the bar near a laundry hamper. There was blood on the zipper of her sweatshirt, and her jeans were bloodstained. There was a bloodstained washcloth on the floor next to her nightstand. Investigators also found her blood near the sink in an adjoining bathroom and on her side of the bed. The blankets and sheets on her side of the bed were "partially pulled back." The evidence suggested that after the first altercation, Angela attempted to "clean up" some of her wounds in the bathroom and changed out of the bloody clothing and into her pajamas. Meanwhile, Adams went outside to smoke a cigarette. She then attempted to go to bed but was interrupted by him, and the second altercation occurred. He left her lying face down on the floor without telling anyone what had happened and did not return to the home.

## (b) Forensic Evidence

A forensic pathologist performed an autopsy on Angela. Based on her injuries, the pathologist opined that the cause of her death was blunt force head injuries and manual strangulation. The jury heard testimony that strangulation can cause a person to lose consciousness "in seconds" and that death by manual strangulation usually requires applying consistent pressure for a period of 2 to 6 minutes.

The autopsy revealed that in addition to extensive head and neck injuries, Angela also suffered injuries to her nondominant hand. The hand injuries were consistent with being defensive wounds.

## (c) Adams' Statements to Police

On the day that Angela died, Adams went to the police station voluntarily and agreed to speak with an officer there. He said that on the way home from the bar, he and Angela were "very drunk" and they got into an argument. The argument continued when they arrived home, and Angela changed into her pajamas. As she was standing near the bed, she began "tapping" or jabbing him in the stomach, so he "stupidly hit her twice and she went down to the floor." He was "pissed off at [himself]" for losing control but denied that he intended to kill her.

Two days later, Adams agreed to speak with the officer a second time. After mentioning the blood found on Angela's sweatshirt and jeans, the officer asked Adams whether he assaulted her more than once. He only remembered hitting her twice while she was wearing her pajamas. Although he denied strangling her, Adams acknowledged that he was the only one who could have done it and said, "I don't know why I did it."

The officer testified that during the interviews, he observed injuries on Adams' left hand. Adams admitted that he is left-handed and that he used his left hand to hit Angela. The officer did not observe "any evidence whatsoever" on Adams' body that she had hit him.

#### (d) Admission of Evidence
#### of Prior Domestic Abuse

*(i) Motions in Limine*

A primary issue in this case was the relevancy and admissibility of allegations of prior domestic abuse. Before trial, Adams filed motions to exclude any allegations that he abused his ex-wife, N.F., in 1997 and any evidence of a conviction related to that incident. He also filed a motion to exclude any allegations that he abused Angela at a Fourth of July party at their previous residence in 2015. The State filed a notice of intent to offer evidence of both incidents under rule 404 and requested an evidentiary hearing.

*(ii) Rule 404 Hearing*

The court held a consolidated evidentiary hearing on the parties' motions. We summarize key testimony.

N.F. testified that one evening in 1997, she and Adams had an argument after he arrived home intoxicated. The argument escalated into a physical altercation. N.F. said, "[A]t one point, I remember being — laying on the floor with him on top of me, with his hands choking me." She testified that the incident occurred on the couple's bedroom floor, Adams grasped her neck with both of his hands, and she was coughing and choking because it was difficult to breathe. When asked how long he held his hands around her neck, she said it "[s]eemed like an eternity, but probably less than a minute." She explained that Adams released her when their young child entered the room crying. She then called the 911 emergency dispatch service. Adams was arrested that day and later convicted of assault.

The State adduced the testimony of Angela's friend, Angela Gillam, regarding the Fourth of July incident. Gillam explained that she experienced a medical issue during the party, and Angela went into the bathroom with her to help her resolve it. Shortly thereafter, Adams, who was intoxicated, began "banging on the door" and screaming at them. They refused to open

the door. Adams accused them of "messing around [with each other] in there" and eventually entered the bathroom. Gillam testified that he immediately grabbed Angela by her neck and threw her up against the wall, screaming, "[Y]ou don't fucking lock me out of my bathroom or it will be the last thing you do."

Gillam's sister testified that she arrived at the home moments later and observed Adams in the kitchen "slamming the cupboard doors." Angela and Gillam, who were standing outside of the bathroom, appeared to be very upset and told her what had happened. Gillam's sister did not recall observing injuries on Angela, but a few days later, Angela's sister observed "finger marks" or "grab marks" on Angela's neck.

### (iii) District Court's Ruling

Following the hearing, the court entered a detailed order finding that the State met its burden to prove the allegations by clear and convincing evidence and that the prior bad acts were admissible under rule 404(2). Regarding the incident with N.F., the court reasoned that Adams' state of mind was at issue in this case and that the evidence was "directly probative to that issue given the distinct similarities between the events." It determined that although the incident occurred long ago, it was "so similar in nature to the current instance that the lapse in time should not preclude its admissibility." It reached a similar conclusion regarding the Fourth of July incident.

The court determined that the evidence of both incidents was relevant and offered for the proper purposes of showing intent, lack of mistake, and premeditation. It further determined that the evidence of Adams' prior abuse of Angela was offered for the proper purpose of showing motive. To the extent that there was prejudice, it noted that a limiting instruction was sufficient to direct the jury as to the appropriate consideration to give the evidence.

At trial, Adams objected to the testimony of N.F., Gillam, and Gillam's sister. The court overruled the objections and

provided limiting instructions. Neither party objected to the limiting instructions given by the court. The trial testimony of N.F., Gillam, and Gillam's sister was consistent with their testimony during the hearing.

### (e) Defense

Adams testified in his defense and claimed that he did not remember everything that happened due to his intoxication, but he was certain that he did not intend to kill Angela. When asked what he recalled happening after they arrived home, he said that "she started hitting [him]" and "[he] lost it and hit her back." He indicated that he did not think before he reacted. Although he did remember hitting her twice and seeing her fall onto the floor, he did not remember grabbing her neck.

Adams' son, who was present in the home when Angela died, also testified. He said that when the couple arrived home from the bar, he heard them "cussing at each other" outside. He later saw them "throwing punches at each other" in their bedroom. He agreed that in his prior statements to police, he gave a different account of events—that he was asleep before they arrived home and did not hear anything.

### 2. Jury Verdict and Sentencing

Following the trial, the jury found Adams guilty of first degree murder. The court accepted the verdict. It later sentenced Adams to life imprisonment and granted him 599 days' credit for time served.

Adams filed a timely appeal. Because of the life sentence imposed, the appeal was docketed with this court.[3]

### III. ASSIGNMENTS OF ERROR

Adams assigns, consolidated and reordered, that the district court erred in (1) admitting evidence under rules 403 and 404

---

[3] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2024).

that Adams "choked" his ex-wife more than 25 years earlier and that he "choked" Angela at the Fourth of July party in 2015, (2) finding the evidence was sufficient to support his conviction, (3) refusing to provide the jury his proposed self-defense instruction, and (4) refusing to change venue after an unknown person, posing as a county court official, sought information about Adams and Angela from a potential defense witness.

## IV. STANDARD OF REVIEW

[1] In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.[4] We set forth additional standards at appropriate points in the analysis.

## V. ANALYSIS

### 1. No Abuse of Discretion in Admitting Prior Bad Acts Evidence

Adams contends that the district court erred in admitting the evidence of prior domestic abuse under rule 404(2). He objected to the testimony of N.F., Gillam, and Gillam's sister under rules 403 and 404. Before addressing his specific arguments, we set forth our standards of review. We then recall the guiding principles of rules 403 and 404.

### (a) Standard of Review

[2,3] Findings of fact made by a district court pursuant to rule 404(3) are reviewed by an appellate court for clear error.[5] An appellate court will affirm a trial court's ruling that the defendant committed an extrinsic crime, wrong, or act if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found with

---

[4] *State v. Dat*, 318 Neb. 311, 15 N.W.3d 410 (2025).

[5] *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024).

a firm conviction that the defendant committed the crime, wrong, or act.[6]

[4,5] It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rules 403 and 404(2), and the trial court's decision will not be reversed on appeal absent an abuse of discretion.[7] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[8]

### (b) Rules 403 and 404

[6] Under rule 404(3), before a court can admit evidence of an extrinsic crime or bad act under rule 404(2), the State must prove by clear and convincing evidence, outside the presence of the jury, that the defendant committed the extrinsic crime or bad act.[9]

[7-9] Rule 404(2) prohibits the admission of other bad acts evidence for the purpose of demonstrating a person's propensity to act in a certain manner.[10] But evidence of other bad acts which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2).[11] Evidence that is offered for a proper purpose under rule 404(2) is often referred to as having "special" or "independent" relevance,

---

[6] See, *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012) (appellate court will affirm ruling that defendant committed uncharged extrinsic crime or bad act if, viewing evidence in light most favorable to prosecution, any rational trier of fact could have found with firm conviction essential elements of uncharged crime); *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012) (same).

[7] *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014).

[8] *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025).

[9] See *State v. Kofoed, supra* note 6.

[10] *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025).

[11] *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

meaning its relevance does not depend upon its tendency to show propensity.[12]

[10,11] All relevant evidence is subject to the overriding protection of rule 403, including other acts evidence.[13] Thus, evidence that is admissible under rule 404(2) may nevertheless be excluded under rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice.[14] The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the fact from the ultimate issue of the case.[15] For the purposes of rule 403, unfair prejudice means an undue tendency to suggest a decision based on an improper basis.[16]

### (c) Application

*(i) No Clear Error in Finding Prior Bad Act*
*Proved By Clear and Convincing Evidence*

In the first of two primary arguments, Adams asserts that the State failed to make the necessary showing under rule 404(3) to introduce the evidence that he abused Angela at the Fourth of July party. He correctly points out that rule 404(3) requires the prosecution to prove by clear and convincing evidence that the accused committed the crime, wrong, or act in order for the evidence to be admitted under rule 404(2).

Adams' argument is premised upon inconsistencies in Gillam's statements to law enforcement, her deposition testimony, and her testimony at the rule 404 hearing. For example, she told law enforcement that Angela's son "intervened" in the

---

[12] *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

[13] *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016).

[14] *State v. Moore*, 317 Neb. 493, 10 N.W.3d 531 (2024).

[15] *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787.

[16] *Id.*

Fourth of July altercation, though she later testified that she did not remember saying that. At one point, she represented that Adams had opened the bathroom door, but she later said that she and Angela might have opened it. Adams suggests that these inconsistences undermine the court's determination that the State proved by clear and convincing evidence that he committed the bad act. We disagree.

Contrary to Adams' suggestion otherwise, the court was aware of the inconsistencies and took them into consideration. In its written order, the court stated that it considered Gillam's testimony during the rule 404 hearing, as well as her deposition testimony and her statements to police. It also considered the testimony of Angela's son, who denied witnessing or participating in the altercation.

Despite any inconsistencies, the court found it significant that Gillam observed the altercation directly and that she described the pertinent conduct twice under oath. Her sworn testimony was consistent that "Adams came through the bathroom door, pushed Angela . . . against the wall, and held her by her throat." The court further reasoned that Gillam's testimony was corroborated by the testimony of her sister, who observed Angela crying at the party, and Angela's sister, who observed marks on Angela's neck 3 days later.

To the extent that there were inconsistencies in Gillam's account of events, they might have affected her credibility or the weight of her testimony. However, we have held that the standard for reviewing a sufficiency of the evidence claim regarding a conviction applies equally to whether, under rule 404, the State proved a defendant committed an uncharged extrinsic crime or bad act.[17] Under that standard, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence.[18] Viewing

---

[17] *State v. Kofoed, supra* note 6.

[18] See *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025).

the evidence in the light most favorable to the State, we conclude that there was no clear error in the court's finding that the State met its burden to prove by clear and convincing evidence that Adams committed this act.

### (ii) No Abuse of Discretion in Determining Relevancy and Admissibility

Adams' second primary argument asserts that even if his prior bad acts were proved by clear and convincing evidence, the court erred in admitting the evidence under rule 404(2). For reasons we will explain, we see no abuse of discretion.

[12] An appellate court's analysis under rule 404(2) considers (1) whether the evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith; (2) whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice; and (3) whether the trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted.[19]

### a. Evidence Relevant for Proper Purposes

The first question centers on relevance. As noted above, the jury heard testimony regarding two incidents: one involving Angela and the other involving N.F. The district court concluded that the evidence of both incidents was relevant and offered for proper purposes under rule 404(2). On appeal, Adams does not attack the relevance of the evidence for those specific purposes.

[13,14] Generally, only those issues specifically assigned and specifically argued on appeal will be considered by the appellate court.[20] Adams has assigned error to the admission of the evidence under rules 403 and 404, but his cursory

---

[19] *State v. Corral, supra* note 10.

[20] *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025).

statement that the evidence was "just propensity evidence"[21] does not amount to an argument. Because he has failed to present a coherent analytical argument on relevancy, we will assume, without deciding, that the court did not abuse its discretion in this regard.[22] The admissibility of prior bad acts evidence under rule 404(2) must be determined upon the facts of each case and is within the discretion of the trial court.[23]

### b. No Abuse of Discretion in Finding Evidence More Probative Than Unfairly Prejudicial

Adams' rule 403 and 404 assignment revolves around timing. He argues that the incident with N.F. occurred in 1997, more than 25 years before the instant offense, and that the prior incident with Angela happened in 2015, approximately 8 years before it. He seems to argue that the remoteness in time rendered the evidence unfairly prejudicial and that therefore, it should have been excluded. We are not persuaded.

[15,16] Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party; only evidence tending to suggest a decision on an improper basis is unfairly prejudicial.[24] While remoteness in time may weaken the value of prior bad acts evidence, such remoteness does not, in and of itself, necessarily justify exclusion of that evidence.[25]

[17] Adams highlights the remoteness in time of the evidence but does not elaborate further. We cannot say that the remoteness in time, without more, justified exclusion. Balancing the

---

[21] Brief for appellant at 18, 22.

[22] See *State v. Ramos, supra* note 20 (where appellant's brief contains conclusory assertions unsupported by coherent analytical argument, appellant fails to satisfy requirement that party asserting alleged error must both specifically assign and specifically argue it in party's initial brief).

[23] *State v. Moore, supra* note 14.

[24] *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

[25] *Id.*

probative value of evidence against the danger of unfair preju-
dice is within the discretion of the trial court, whose decision
an appellate court will not reverse unless there is an abuse of
discretion.[26] Here, there was none.

#### c. No Challenge to Limiting Instructions

Before the jury heard the testimony of N.F., Gillam, and
Gillam's sister, the court gave limiting instructions. It tendered
a similar instruction at the close of trial. Neither party chal-
lenged the limiting instructions given by the trial court.

### 2. Evidence of Premeditation Was Sufficient

Adams next argues that the evidence was insufficient
to support his conviction for first degree murder. Under
Nebraska law, a person commits first degree murder when
he or she kills another person "purposely and with deliberate
and premeditated malice."[27] Adams' sole contention is that the
State failed to prove beyond a reasonable doubt that he acted
with premeditation.

#### (a) Standard of Review

[18] In reviewing a criminal conviction for sufficiency of
the evidence, whether the evidence is direct, circumstantial,
or a combination thereof, the standard is the same: An appel-
late court does not resolve conflicts in the evidence, pass
on the credibility of witnesses, or reweigh the evidence;
such matters are for the finder of fact. The relevant ques-
tion is whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a
reasonable doubt.[28]

---

[26] *State v. Rush, supra* note 15.

[27] § 28-303(1).

[28] *State v. Perry, supra* note 18.

## (b) Application

Adams asserts that the State failed to prove beyond a reasonable doubt that he acted with premeditation, because there was no evidence showing he formed the intent to kill before the act was committed. He argues that the evidence "is much more likely"[29] to support a conviction for manslaughter, which does not require premeditation.

[19-22] The term "premeditated" means to have formed a design to commit an act before it was done.[30] One kills with premeditated malice if, before the act causing death occurs, one has formed the intent or determined to kill the victim without legal justification.[31] No particular length of time for premeditation is required, provided the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death.[32] The time required to establish premeditation may be of the shortest possible duration and may be so short that it is instantaneous, and the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed.[33]

[23-25] When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.[34] Premeditation is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.[35] The manner or fashion in which the injury was inflicted may show a

---

[29] Brief for appellant at 27.

[30] *State v. Scott*, 319 Neb. 153, 21 N.W.3d 490 (2025).

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *State v. Yah*, 317 Neb. 730, 11 N.W.3d 632 (2024).

[35] *State v. Scott, supra* note 30.

deliberate act and hence serve as evidence to support a finding of premeditation.[36]

Viewing the evidence in the light most favorable to the prosecution, we conclude that the State met its burden to prove premeditation beyond a reasonable doubt. Adams, who had a history of being jealous, was angry before the couple left the bar, because he believed that Angela had cheated on him. There is no dispute that they argued on the way home and that the argument continued after they entered the home. Moreover, prior to Angela's death, there were two altercations. After the first one, Angela cleaned up her injuries, changed her clothes, and attempted to go to bed. Adams went outside to smoke a cigarette and then returned to the couple's bedroom, where Angela died shortly thereafter.

The jury could reasonably conclude from the evidence that the couple had a domestic argument and that because of his jealousy, Adams beat and strangled Angela to death. Despite his testimony that he did not intend or plan to kill her, the jury could reasonably believe that he did form the intent to kill her at some point before her death. The State argued, and the jury apparently chose to believe, that the process of manual strangulation was time consuming and supported a finding of premeditation.[37]

[26] A question of premeditation is for the jury to decide.[38] Here, even if Adams' testimony supported an alternative theory regarding his mental process leading up to Angela's death, we do not resolve conflicts in the evidence, pass on his credibility, or reweigh evidence. Instead, the question is whether, after viewing the evidence in the light most favorable to the

---

[36] *State v. Kilmer*, 318 Neb. 148, 13 N.W.3d 717 (2024).

[37] See, also, *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987).

[38] *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018), and *State v. Hagens, ante* p. 65, 26 N.W.3d 174 (2025).

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Viewed in that light, the evidence was sufficient to support his conviction.

### 3. No Error in Refusing
### Self-Defense Instruction

Adams asserts that the court erred in refusing his proposed self-defense instruction.

### (a) Standard of Review

[27] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[39]

[28] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[40]

### (b) Additional Facts

At the jury instruction conference, Adams proposed an instruction on self-defense. The court refused it, reasoning that it was not supported by the evidence, including Adams' own statements and testimony.

### (c) Application

Adams has the burden to show reversible error. The parties seemed to agree that his proposed instruction was modeled after the Nebraska pattern jury instruction and is a correct statement of the law. The dispute centers on the next question: whether his proposed instruction is warranted by

---

[39] *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024).

[40] *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

the evidence. We conclude that Adams has failed to meet his burden.

Adams relies upon the proposition that a trial court must instruct the jury on the issue of self-defense when there is any evidence adduced which raises a legally cognizable claim of self-defense.[41] He draws our attention to his testimony that he did not remember hitting Angela until after she started hitting him. He also points to his son's testimony that he and Angela were hitting each other. He asserts that "[b]ecause [he] can't remember everything that happened during the fight due to his intoxication, the jury should have been able to determine what the facts were and whether self-defense was justified."[42] We see no merit to this argument.

Self-defense is a statutorily defined affirmative defense in Nebraska.[43] Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) provides, in relevant part, that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."

[29-31] We have interpreted § 28-1409 to mean that "to successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force [and] the force used in defense must be immediately necessary and justified under the circumstances."[44] Only where the jury could reasonably find that the defendant's use of force was justified should the trial court instruct the jury on self-defense.[45] If the trial evidence does not support a claim of self-defense, the jury should not be instructed on it.[46]

---

[41] *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

[42] Brief for appellant at 24.

[43] *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020).

[44] *State v. Rezac*, 318 Neb. 352, 371, 15 N.W.3d 705, 721 (2025).

[45] *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023).

[46] *Id.*

There are at least three problems with Adams' argument. First, the jury was not permitted to infer that his use of force was justified simply because he was intoxicated. To the extent that his argument suggests otherwise, he is wrong. "In Nebraska, it has long been recognized that 'intoxication is not a justification or excuse for crime.'"[47]

Second, even resolving all reasonable inferences in Adams' favor, the evidence does not support a "reasonable and good faith belief" that force was "immediately necessary" for Adams to protect himself against the use of unlawful force by Angela. For example, there is no evidence from which one could reasonably infer that he was fearful of bodily injury or that she caused any. Nor is there evidence that his use of force could not have been avoided. He told police that before he hit her, she was "tapping" or jabbing him in the stomach, so he "stupidly hit her twice and she went down to the floor." He was "pissed off at [himself]" for losing control and "d[idn't] know why [he] did it."

Likewise, the evidence does not support the conclusion that the force used by Adams was justified under the circumstances. The evidence shows that the cause of Angela's death was blunt force head injuries and manual strangulation. Under other circumstances, the testimony that Adams relies upon, if credible, might have provided some support for a legally cognizable claim. Here, however, even assuming that Adams was not the first aggressor and that he and Angela were hitting each other, his acts of inflicting blunt force head injuries and strangling her were not justified under the circumstances.

[32] "It is not enough to merely show '"any evidence"' of self-defense to support an instruction thereon. Instead, the defendant must show '"any evidence in support of a legally cognizable theory of self-defense."'"[48] Adams has failed to do so.

---

[47] *State v. Esch*, 315 Neb. 482, 499, 997 N.W.2d 569, 583 (2023).

[48] *State v. Johnson, supra* note 45, 314 Neb. at 42, 988 N.W.2d at 175.

[33] On this record, we cannot conclude that the court erred in refusing Adams' requested self-defense instruction. Because the instruction is not warranted by the evidence, we need not consider whether it is a correct statement of the law and whether Adams was prejudiced by the court's refusal. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[49]

### 4. NO ABUSE OF DISCRETION IN OVERRULING MOTION TO CHANGE VENUE

Before trial, Adams filed a motion to change venue premised upon pretrial publicity and an email that was sent to a "potential defense witness."[50] On appeal, he challenges the overruling of his motion only as to the email.

### (a) Standard of Review

[34] A motion for change of venue is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion.[51]

### (b) Additional Facts

The email was sent after the State charged Adams, and the sender purported to be a county court official seeking information. The body of the email stated that "[i]t ha[d] been made known to the courts" that the recipient was "an acquaintance to one or more of the parties involved" in this case. It requested the recipient's "written insight as to the character and known relationship(s) between the parties involved." The recipient knew Adams and Angela and responded to the email.

The email correspondence was later forwarded to defense counsel, who notified the court. Defense counsel argued that it seemed improper and warranted an investigation. The court agreed and appointed a special prosecutor to investigate.

---

[49] *State v. Hagens, supra* note 38.

[50] Brief for appellant at 25.

[51] *State v. Gonzalez*, 313 Neb. 520, 985 N.W.2d 22 (2023).

Following his investigation, the special prosecutor submitted a letter to the court with his findings. He was unable to determine the sender's identity, but he "c[ould] say with confidence" that the email was not sent by the county court official. He concluded that "[s]omeone, for unknown reasons, spoofed [the county court official's] email sending it to the [recipient]." He explained that "[e]mail spoofing" is a technique utilized by "scammers" online, where they attempt to mislead a recipient into "thinking they are getting a legitimate email" in order to elicit a response.

In the motion to change venue, Adams expressed concern that the sender could be a potential juror in this case. The court held a hearing and overruled the motion. It reasoned, in pertinent part:

> [T]he conclusion drawn after significant time of investigation is that nobody knows who did it, other than we know it wasn't the [county court official], that was concluded. And nobody knows where that person did it from. So, we live in a cyber world, and I think that reaches anywhere. We could move this anywhere and the potential for the juror to be in the pool is there. It's not just a Hamilton County issue. So I think that we would just be moving it for the sake of moving it.

Although the court overruled Adams' motion, it granted his request for a supplemental jury questionnaire that asked potential jurors whether they knew Adams and Angela and had formed an opinion in this case. He asked similar questions during voir dire. Thereafter, he did not renew his motion to change venue and passed the jury for cause.

### (c) Application

Based on the email, Adams makes the broad assertion that the court's overruling of his motion to change venue deprived him of a fair trial and an impartial jury. He cites no evidence or legal authority in support.

[35] This argument lacks merit. Adams had ample opportunity to ask potential jurors whether they knew him and Angela and had formed an opinion in this case. Voir dire examination provides the best opportunity to determine whether the moving party has met his or her burden and venue should be changed.[52]

[36] Despite his concern that the email's sender could be a potential juror, Adams passed the jury for cause. Generally, a party who fails to challenge the jurors for disqualification and passes the jurors for cause waives any objection to their selection.[53] We see no abuse of discretion.

## 5. Plain Error Appears in Record

[37] The State argues that the district court committed plain error when it applied 599 days' credit for time served to Adams' life sentence. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[54]

[38] We agree with the State. "A defendant is not entitled to credit for time served against a life sentence."[55] Here, only one sentence was imposed: a life sentence. When a sentencing error is noted on direct appeal, an appellate court can modify the sentence. Alternatively, an appellate court can vacate an invalid or erroneous sentence and remand a cause to the sentencing court for imposition of a lawful sentence.[56] In this situation, remand is not necessary.

---

[52] *Id.*

[53] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[54] *State v. Coomes*, 309 Neb. 749, 962 N.W.2d 510 (2021).

[55] *State v. Gleaton*, 316 Neb. 114, 142, 3 N.W.3d 334, 353 (2024).

[56] *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025).

Because the court's application of 599 days' credit for time served was plain error, we modify Adams' sentence only to eliminate the credit. We affirm the remaining portion of the sentence, which is a complete valid sentence.

## VI. CONCLUSION

We conclude that Adams' arguments lack merit. But because the district court plainly erred in applying credit for time served to Adams' only sentence, which imposed life imprisonment, we modify the sentence as set forth above. We affirm the court's judgment as modified.

Affirmed as modified.

Bergevin, J., not participating.